IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SILVIA LEE MILBURN,

    Plaintiff,

v.

CITY OF LEBANON, a municipality,

    Defendant.

Case No. 6:16-cv-00435-AA
OPINION AND ORDER

AIKEN, Judge:

    Plaintiff Silvia Lee Milburn brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 against defendant City of Lebanon. After plaintiff was convicted of animal abuse in Lebanon Municipal Court, defendant forfeited plaintiff's dog to Linn County Animal Control, which utilized Safe Haven Humane Society to find a new home for the dog. A new owner subsequently adopted the dog. Plaintiff appealed her conviction and a Linn County Circuit Court jury acquitted her of

Page 1 - OPINION AND ORDER

animal abuse.[1] After the acquittal, Linn County Circuit Court ordered defendant to return plaintiff's dog, but defendant failed to comply with the order.

Plaintiff then filed this action, contending defendant's failure to return the dog violated her constitutional right to due process. Defendant moved for dismissal for failure to state a claim, and this Court granted that motion while giving leave for plaintiff to amend her complaint. Plaintiff amended her complaint, and defendant moved for dismissal for failure to state a claim and lack of subject matter jurisdiction. For the reasons set forth below, defendant's second motion to dismiss is granted. Plaintiff's claim for injunctive relief is dismissed with prejudice, but plaintiff is granted leave to amend her complaint with regard to her claim for actual and compensatory damages.[2]

## BACKGROUND

On September 13, 2013, a Lebanon police officer removed plaintiff's dog from her possession. Am. Compl. ¶ 7. Plaintiff was later convicted of misdemeanor animal abuse in Municipal Court for the City of Lebanon on April 9, 2014. *Id.* ¶ 9. Plaintiff immediately filed a notice of appeal to Linn County Circuit Court and moved to stay the sentence. *Id.* The municipal court declined to stay the sentence. Mot. to Dismiss at 2-3 (doc. 8). While the appeal was pending, defendant gave the dog to an animal shelter, and the dog was adopted by a new owner on April 27,

---

[1] Oregon law provides criminal defendants in some municipal courts, including defendant's, an appeal as of right to a county circuit court. Or. Rev. Stat. § 221.359. The county court trial is a *de novo* proceeding. *City of Eugene v. Smyth*, 243 P.3d 854, 857 (Or. Ct. App. 2010).

[2] As previously explained, even if plaintiff's procedural due process claim were adequately pleaded, principles of abstention would prevent me from providing plaintiff the remedies she seeks while state court proceedings are unresolved. *See Milburn v. City of Lebanon*, 2016 WL 4163551, *2 (D. Or. Jul. 3, 2016) ("The doctrine of abstention prevents this Court from providing the relief plaintiff seeks while state proceedings are pending.").

Page 2 - OPINION AND ORDER

2014. *Id.* at 3. On June 18, 2015, plaintiff was acquitted of the animal abuse charge in a trial in Linn County Circuit Court. Am. Compl. ¶ 12. On September 14, 2015, the Linn County Circuit Court ordered defendant to return the dog to plaintiff. *Id.* ¶ 17. An appeal of that order is pending in the Oregon Court of Appeals. Decl. Gerald Warren Ex. 4. Currently, plaintiff does not have custody of the dog.

Plaintiff filed this lawsuit alleging defendant's actions violated her constitutional rights to procedural due process. Am. Compl. ¶ 1. Defendant moved to dismiss for failure to state a claim. On August 3, 2016, this Court granted defendant's motion to dismiss and gave plaintiff leave to amend her complaint. Plaintiff's amended complaint is now before the Court. *Id.* Plaintiff seeks monetary damages, court costs, attorney's fees, and an injunction ordering the return of her dog. *Id.* at 10. Defendant again moves to dismiss for failure to state a claim for which relief may be granted. Defendant also asserts the *Rooker-Feldman* doctrine divests this Court of subject matter jurisdiction over plaintiff's claims.

## ANALYSIS

I.   *Motion to Dismiss for Failure to State a Claim*

Defendant argues plaintiff failed to adequately amend her complaint, and therefore failed to state a claim. Sec. Mot. to Dismiss at 2 (doc. 17).

A.   *Standard*

When considering a motion to dismiss, a court construes a complaint in favor of the plaintiff and takes all factual allegations as true. "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969

(9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Facial plausibility requires plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

    B.    *Discussion*

In her Amended Complaint, plaintiff contends defendant's refusal to return her dog pursuant to the state court order deprives her of property without due process of law, in violation of the Fourteenth Amendment. Am. Compl. ¶ 35. Specifically, plaintiff asserts a violation of her procedural due process rights, as well as "rights of possession of personal property in violation of Amendments IV and V, as applied to defendant City's actions under color of state law through Amendment XIV of the United States Constitution, actions which are therefore as well a violation of federal statutory provisions under 42 U.S.C. § 1983 *et seq.*" *Id.* In response, defendant argues plaintiff has failed to state a claim because the Amended Complaint neither "challenge[s] the procedure itself, nor. . . claim[s] that the State failed to provide adequate procedures. It is an attempt to use the Federal District Court of Oregon as a Court of Appeals to an Oregon Court." Sec. Mot. to Dismiss at 3.

While plaintiff alleges a state-law property interest in her dog, *see* Or. Rev. Stat. § 609.020 (declaring dogs to be personal property), she fails to allege defendant deprived her of that interest without adequate process. This Court's August 3, 2016 Opinion and Order held "[t]he complaint does not identify a procedure to be challenged . . . . Neither does plaintiff allege state remedies to be inadequate. These two omissions in combination are fatal to plaintiff's procedural due process

Page 4 - OPINION AND ORDER

claim." *Milburn v. City of Lebanon*, 2016 WL 4163551, *3 (D. Or. Jul. 3, 2016).³ Those sentences were intended to refer to two differing avenues for procedural due process claims. In light of this language, I understand why it would be easy for plaintiff to conflate the two procedural due process tests at hand. Thus, I will clarify my reasoning below.

As relevant here, procedural due process claims take differing forms. Generally, alleged violations require a *Mathews* analysis. *Mathews v. Eldridge*, 425 U.S. 319 (1976). A subset of the *Mathews* test, the *Parratt/Hudson* test applies only to alleged violations that occur as a result of random and unauthorized acts by government officials. *Parratt v. Taylor*, 451 U.S. 527 (1981)⁴; *Hudson v. Palmer*, 468 U.S. 517 (1984). Under the general *Mathews* test, a plaintiff must allege the *defendant* failed to provide adequate process. Under the more specific *Parratt/Hudson* test, a plaintiff must allege she has inadequate postdeprivation remedies under *state law*.

Here, plaintiff confuses the *Mathews* test with its subset, the *Parratt/Hudson* test. The Amended Complaint focuses on the alleged inadequacy of state-court mandamus procedures to enforce the circuit court's order, suggesting plaintiff locates her claim under *Parratt/Hudson*. Am. Compl. ¶ 40-42. But plaintiff bases her procedural due process claim on an official government policy, not a random or unauthorized act. She alleges her deprivation resulted from an official "policy statement, ordinance, regulation, or decision official adopted and promulgated by [the City's]

---

³This Westlaw citation date is incorrect. The Opinion and Order was signed in August, not July.

⁴*Parratt* was overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986). While *Parratt* is not good law "to the extent that it states that mere lack of due care by a state official may deprive an individual of life, liberty, or property under the Fourteenth Amendment," *id.* at 330-31, it still provides the framework for the type of deprivation discussion here. *See Edwards v. Staton*, 2015 WL 350635, *4 (D. Or. 2015) (applying "the *Parratt-Hudson* doctrine").

Page 5 - OPINION AND ORDER

officers, and/or is the result of the defendant's custom." Am. Compl. ¶ 38.

The *Parratt/Hudson* test does not apply here because the cases that created that test are distinguishable from the complaint at hand. *Parratt*, a 1981 Supreme Court case, involved a Nebraska prisoner whose hobby kit the prison lost. A prison official randomly and without authorization failed to follow protocol, resulting in deprivation of the prisoner's property. The prisoner sued the prison officials, saying their negligence caused the loss of his property. *Parratt*, 451 U.S. at 529. *Hudson*, a 1984 Supreme Court case, involved a prison official who intentionally destroyed a prisoner's wall posters and personal possessions. 468 U.S. at 520, 544. The prison official was not acting pursuant to any established state procedure. To the contrary, he pursued a random, unauthorized personal vendetta against the prisoner. *Id.* at 533.

The root of a *Parratt/Hudson* analysis is whether the defendant could have anticipated the risk of the plaintiff's deprivation. *Zinermon v. Burch*, 494 U.S. 113, 133 (1990). For example, in *Parratt*, the state could not reasonably provide predeprivation process because deprivation resulted from an unplanned, random, and unintentional act. *Parratt*, 451 U.S. at 541. Simply, the defendant could not have anticipated the plaintiff's deprivation. *Id.; Zinermon*, 494 U.S. at 137 ("In *Parratt*, the very nature of the deprivation made predeprivation process impossible." (quotation marks omitted)). Additionally, in *Hudson*, while the official's actions were intentional, "the State still was not in a position to provide predeprivation process, since it could not anticipate or control such random and unauthorized intentional conduct." *Zinermon*, 494 U.S. at 137.

However, here defendant was in a position to provide for predeprivation process. Plaintiff was deprived of her property while her original conviction was under appeal. Defendant could have anticipated the risk of plaintiff's deprivation because if plaintiff were acquitted, defendant would

Page 6 - OPINION AND ORDER

need to return her property. The *Parratt/Hudson* test does not apply.

Plaintiff's claim is also inadequately pleaded under *Mathews*. Under a general *Mathews* analysis, an adequately pleaded due process claim has to allege that at some point in the process the defendant did not follow procedures or that the defendant should have provided additional procedures as a safeguard. *See Mathews*, 424 U.S. at 347 (in "striking the appropriate due process balance" courts mst consider "the administrative burden and other societal costs" associated with providing additional procedural protections). Here plaintiff asserts the circuit court issued the order and that defendant is not complying. Am. Compl. ¶ 29-30. That argument is an attack on the *result* of the procedure, not the *process*, or lack thereof, itself. Attacking the result instead of the process of a procedure does not state a procedural due process claim. *See Ward v. Temple Univ.*, 2003 WL 21281768, at *5 (E.D. Pa. Jan. 2, 2003) ("[I]n order to state a claim of a procedural due process violation, a plaintiff must attack the procedures used to reach the conclusion, not the result itself.").

Since plaintiff fails to adequately plead a procedural due process claim, that claim is dismissed. To decide whether to dismiss with prejudice, this Court must determine whether the *Rooker-Feldman* doctrine applies.

II.     *The* Rooker-Feldman *Doctrine*

Defendant argues the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction because plaintiff is "attempting to prosecute de facto appeals of . . . State Court decisions." Sec. Mot. to Dismiss at 5 (doc. 17). Plaintiff does not respond to this argument.

A.     *Standard*

The *Rooker-Feldman* doctrine derives from two United States Supreme Court cases, decided sixty years apart. *See Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983);

Page 7 - OPINION AND ORDER

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). It also originates from 28 U.S.C. § 1257, which sets forth the exclusive means by which state court judgments are reviewable in federal court. The *Rooker-Feldman* doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010); *see also Dubinka v. Judges of Sup. Ct.*, 23 F.3d 218, 221 (9th Cir.1994) ("Federal district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions.").

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005), the Supreme Court substantially limited the *Rooker-Feldman* doctrine. The Supreme Court clarified that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments." *Id.* at 284. The *Rooker-Feldman* doctrine bars litigation of a claim in federal district court only when a federal plaintiff asserts an allegedly erroneous decision by a state court as a legal wrong, and seeks relief from a state court judgment based on that decision. *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). The doctrine also bars litigation of an issue that is "inextricably intertwined" with a "forbidden de facto appeal" from a state court decision. *Id.* at 1158. An issue is inextricably intertwined with a forbidden de facto appeal if the relief requested in the federal action would, in effect, reverse or void the state court decision. *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)).

B.  *Discussion*

This is one of the rare cases in which the *Rooker-Feldman* doctrine applies. This Court is careful not to sweep too broadly in its application. Plaintiff asserts forfeiture of her property as her injury. In seeking the return of her dog with this current lawsuit, plaintiff is effectively seeking relief from the state court judgment of denial of her petitions for a peremptory writ of mandamus.

Plaintiff claims the circuit court wrongly denied her multiple petitions for a peremptory writ of mandamus, making her a "state court loser." Am. Compl. ¶ 19, 23-24, 26, 28. In order to remedy her situation, plaintiff asks for injunctive relief in the form of a court order compelling immediate return of her dog, a remedy that would reject those state court judgments. Am. Compl. 10. Effectively, she is attempting to appeal the serial denial of her mandamus relief.

This Court understands that pets play a unique and valuable role in many individuals' lives, and is sympathetic to plaintiff's current situation. However, sympathy does not change the jurisdiction of this Court. Since plaintiff seeks a de facto appeal from a state court judgment, the *Rooker-Feldman* doctrine applies, barring jurisdiction over her injunctive relief claim. Therefore, plaintiff's prayer for injunctive relief is dismissed with prejudice.

In addition to injunctive relief, plaintiff seeks monetary damages ("actual and compensatory damages of $76,000.00 and statutory interest"). Am. Compl. 10. There is disagreement in the federal courts over the extent to which *Rooker-Feldman* applies to claims for monetary damages when the state court denied injunctive relief. *Compare Sibley v. Lando*, 437 F.3d 1067, 1070, n.3 (11th Cir. 2005) *with Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007). The Ninth Circuit has yet to weigh in on this issue.

At this point, it is unnecessary to decide which approach is correct. Even assuming *Rooker-*

*Feldman* can bar federal damages claims after a state court denied injunctive relief, it does not bar monetary damages here for two reasons. First, the money damages are not "inextricably intertwined" with the state court's denial of plaintiff's mandamus relief; whether plaintiff's procedural due process rights were violated by defendant's failure to follow the state court order and whether plaintiff was entitled to mandamus relief are two separate questions. Second, although it is possible the damages claim is "inextricably intertwined" with the state court order to return the dog, plaintiff is not a state-court loser with respect to that claim because she obtained a favorable result that is now pending on appeal. *Rooker-Feldman* does not divest this Court of jurisdiction over plaintiff's damages claim at this time.

## CONCLUSION

Defendant's motion to dismiss is GRANTED. Plaintiff's prayer for injunctive relief is dismissed with prejudice. Plaintiff's prayer for actual and compensatory damages is dismissed without prejudice. Plaintiff is granted leave to amend her complaint within 90 days.

IT IS SO ORDERED.

Dated this 21st day of November 2016.

Ann Aiken
United States District Judge